1

2

3

4

5

6

7

8

9

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10

LARY FEEZOR,

11

             Plaintiff,                    No. CIV S 12-0156 KJM EFB

12

      v.

13

EXCEL STOCKTON, LLC, et al.,        ORDER

14

             Defendants.

15

_____/

16            In January 2012, plaintiff Lary Feezor (Feezor) filed a complaint in which he

17  alleges that he encountered barriers at a shopping mall in Stockton, California, including the

18  following barriers at a Kohl's Department Store (Kohl's): none of the check-out aisles are

19  designated as being accessible to the disabled or as being open at all time for persons with

20  disabilities; the disposable seat cover dispenser in the restroom is mounted too high, making it

21  difficult for Feezor to reach and use; the front roll of toilet tissue is too far from the front of the

22  water closet, making it difficult for Feezor to reach and use; the toilet tissue dispenser is

23  mounted too far from the back wall, making it difficult for Feezor to reach and use; and there is

24  insufficient strike side clearance for the restroom door, making it difficult for Feezor to pull open

25  the door to leave the restroom.  ECF No. 1 ¶ 35.  He alleges that these failings violate the

26  Americans with Disabilities Act (ADA), 42 U.S.C. §12101, *et seq.*; the Disabled Persons Act,

1

CAL. CIV. CODE § 54, *et seq*.; the Unruh Civil Rights, CAL. CIV. CODE §51; and California Health and Safety Code § 19955, *et seq.*  ECF No. 1 at 57-61.

In the Fall of 2012, Feezor and Kohl's filed cross-motions for summary judgment and Kohl's has filed a supplement to its motion.  Feezor has objected to this additional argument and material.

In January 2013, Feezor filed a motion to dismiss the claims in his complaint against separate defendant Bed, Bath and Beyond (BBB), claiming a lack of subject matter jurisdiction.  The court issued an order to show cause to Feezor's lawyer, Lynn Hubbard III, in connection with this motion.

After considering the parties' submissions and arguments made at hearing, the court GRANTS Kohl's motion for summary judgment, DENIES Feezor's motion for summary judgment, DENIES Feezor's motion to dismiss, and SANCTIONS Lynn Hubbard III.

## I.  THE MOTIONS FOR SUMMARY JUDGMENT

### A.  Summary Judgment Standard

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

---

[1] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

This standard does not change when the parties file cross-motions for summary judgment: the court must apply the same standard and rule on each motion independently because the granting of one motion does not necessarily translate into the denial of the other unless the parties rely on the same legal theories and same set of material facts.  *Pintos v. Pac. Creditors Ass'n*., 605 F.3d 665, 674 (9th Cir. 2010), *cert. denied sub nom. Experian Info. Solutions, Inc. v. Pintos*, __ U.S. __, 131 S. Ct. 747 (2011); *Ingram v. AAA Fire & Cas. Co*., No. 6:12–cv–01215–AA, 2013 WL 1826350, at *2 (D. Or. Apr. 28, 2013).

B.  <u>Evidentiary Issues</u>

i.  Expert Witnesses

In support of its motion, Kohl's relies on the declaration of Lonnie Haughton, a Codes and Construction Consultant at Richard Avelar & Associates, a licensed general

contractor, and a Certified Access Specialist (CASp), certified by the State of California to perform accessibility surveys.  Declaration of Lonnie Haughton, ECF No. 62-5 ¶¶ 2-3, 5.  Feezor objects on a number of grounds.

First, Feezor argues that Haughton is not qualified to opine on questions of law. This objection is well taken: "'[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on the ultimate issue of law.'" *Nationwide Transp. Fin. v. Cass Info. Systs., Inc*., 523 F.3d 1051, 1058 (9th Cir. 2008) (quoting *Hangarter v. Provident Life & Accident Ins. Co*., 373 F.3d 998, 1016 (9th Cir. 2004)) (emphasis in original).  To the extent either Haughton or plaintiff's expert Joe Card provide legal conclusions about controlling law or the availability of statutory damages, the court will disregard those portions of the respective declarations and reports.

Second, Feezor contends that Haughton relied on unauthenticated photographs and measurements.  He acknowledges that an expert may rely on sources of information that may not be admissible in evidence, but argues that Kohl's has not shown that an expert would rely on such information.  In response, Kohl's has presented the declaration of Susan Pae, a staff architect with Richard Avelar & Associates and CASp, who avers that she visited the Kohl's Department Store at 10850 Trinity Parkway in Stockton on September 5, 2012, and took photographs and measurements, which she reviewed with Lonnie Haughton.  Decl. of Susan Pae, ECF No. 65-1 ¶¶ 2-3, 7.  The court overrules this objection.  Haughton does rely on Pae's photographs and measurements in his expert report, attached as Exhibit 3 to his declaration. ECF No. 62-8 at 6.  An expert's opinion "may be based on data collected by others" and an expert may consult with colleagues in the course of reaching his opinion.  *Wolkowitz v. Lerner*, No. SA CV 07-777 CAS, 2008 WL 1885770, at *4 (C.D. Cal. Apr 21, 2008); *see also Hoang v. Funai Corp*., 652 F. Supp. 2d 564, 573 (M.D. Pa. 2009) (finding expert's reliance on photographic evidence rather than visit to fire scene did not render methodology unreliable). The court also rejects plaintiff's claim that defendant has failed to establish it was reasonable for

4

1   Houghton to rely on the photographs and measurements; plaintiff's expert himself relies on

2   photographs and measurements, albeit ones he took himself, to generate his expert report and

3   declaration.  *See* First Decl. of Joe Card & Exhibits, ECF Nos. 58-3, 58-4.

4                    ii.  Judicial Notice

5                    Kohl's has asked the court to take judicial notice of a number of documents,

6   including the contents of civil minutes dated August 3, 2012 filed in the case of *Rush v. Denco*

7   *Enterprises, Inc*., No. EDCV 11-0030 DOC (OPX) (C.D. Cal.), and orders filed in *Kohler v. Bed,*

8   *Bath & Beyond of California, LLC*., No. EDCV 11-01246 VAP (OPX) (C.D. Cal.); *Kohler v.*

9   *Bed, Bath & Beyond of California, LLC*, CV 11-4451 RSWL (SPX) (C.D. Cal.); and *Kohler v.*

10  *Bed, Bath & Beyond of California, LLC*, CV 11-04554 DMG (MANx) (C.D. Cal.).  As these

11  materials are not themselves facts, they are not subject to judicial notice.  FED. R. EVID. 201 (a)

12  ("This rule governs judicial notice of an adjudicative fact . . . ."); *Jones v. Curry*, No. C 07-1013

13  RMW (PR), 2008 WL 3550866, at *2 (N.D. Cal. Aug. 13, 2008) (stating that parties should not

14  request the court take judicial notice of cases but rather should cite them in briefs; such requests

15  "unnecessarily consume judicial resources and delay the resolution of cases").

16                   Feezor asks the court to take judicial notice of excerpts of the 1991 and 2010

17  ADA standards.  Decl. of Daniel Watts, ECF No. 63-2.  These also are not facts, but rather are

18  the minimum guidelines and requirements for the standards issued under the authority of the

19  ADA and are used to interpret the ADA and its regulations.  *Daubert v. City of Lindsay*, No.

20  1:10–cv–0016 GSA, 2011 WL 3917369, at *5 (E.D. Cal. Sep. 6, 2011).  The court declines to

21  take judicial notice of the standards, but will consider them in resolving the parties' contentions.

22      C.  Other Issues

23                   Feezor objects that Kohl's did not give timely notice of its motion for summary

24  judgment, in that it was filed less than twenty-eight days before the scheduled hearing date and

25  says the court cannot grant summary judgment *sua sponte* without giving notice.  He also argues

26  that Kohl's motion is not substantially related because it presents additional facts and so does not

fall within the ambit of Local Rule 230(e), which permits a counter-motion related to a pending motion to be filed on the date the opposition is due.  Even though Kohl's motion presents additional facts and arguments, it is substantially related to plaintiff's motion, as both motions address the alleged barriers plaintiff encountered during his visit to Kohl's in December 2011. Defendant's argument that the court lacks subject matter jurisdiction stems from its argument that there were and are no barriers and thus Feezor lacks standing under the ADA.  If Feezor did not believe he had a "'full and fair opportunity to ventilate the issues'" in Kohl's cross-motion, it was incumbent on him to say so before the date his opposition/reply was due.  *Am. Motorists Ins. Co. v. Am. Re-Ins. Co.*, No. C 05-5202 CW, 2007 WL 1557848, at *1 n.3 (N.D. Cal. May 29, 2007) (quoting *In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998)).

In addition, as the court resolves the pending motions for summary judgment on the papers filed originally, and has not considered Kohl's supplemental briefing, Feezor's objection to that document is moot.

Each party accuses the other of failing to meet and confer.  The court declines to resolve the parties' disagreement in this respect.

D. <u>Undisputed Facts</u>

Plaintiff Lary Feezor is a paraplegic who relies on a wheelchair when traveling in public, as he is unable to stand or walk.  Pl.'s Statement of Undisputed Facts, ECF No. 58-2 ¶ 2; Def.'s Response, ECF No. 62-1 ¶ 2.  On December 28, 2011, plaintiff visited the Kohl's Department Store located at 10850 Trinity Parkway, Stockton, and made purchases.  ECF No. 58-2 ¶ 1; ECF No. 62-1 ¶ 1.

Kohl's is a retail store, which is a place of public accommodation as defined by Title III of the ADA.  ECF No. 58-2 ¶ 3; ECF No. 62-1 ¶ 1.  The store is considered "new" construction within the meaning of the ADA.  ECF No. 58-2 ¶ 7; ECF No. 62-1 ¶ 7.

At least one men's restroom in Kohl's has a stall accessible to the disabled.  ECF No. 65-3, Ex. 2 at 2; ECF No. 58-3 ¶ 2(a).  The front edge of the water closet -- the parties' term

for the toilet -- in that stall is 26 inches from the rear wall.  ECF No. 65-3, Ex. 2 at 5; ECF No.

58-3 ¶ 2(b).  There are two rolls of toilet paper in this stall, mounted side by side and covered by

a plastic housing.  ECF No. 65-3, Ex. 2 at 3; ECF No. 58-3 ¶ 2(d), (e).  The distance between the

front of the water closet and the centerline of the roll of toilet paper closest to the water closet is

33.5 inches from the back wall, and so is 7.5 inches from the front of the water closet.  ECF No.

65-3, Ex. 2 at 4.  The far edge of the closest roll is more than 36 inches from the back wall.  ECF

No. 68-3 ¶ 2(d).  The center of the plastic housing for the two rolls is 37¾ inches from the back

wall and so is 11¾ inches from the front of the water closet.  ECF No. 58-3 ¶ 2(a) & 58-4 at 6.

Plaintiff avers that the "front roll of toilet tissue is too far from the front of the water closet . . .

making it difficult for me to reach and use."  ECF No. 58-6 ¶ 6(b).

> To leave the restroom, one has to pull the door, which swings inward.  The wall to

the side of the strike, or latch, side of the door extends out 7¼ inches from the edge of the door.

ECF No. 58-3 ¶ 2(f); ECF No. 58-4 at 10.  The maneuvering clearance at that side of the door

exceeds six feet.  ECF No. 62-5 ¶ 15; ECF Nos. 58-4 & 58-7; ECF No. 63-1 at 4 (Second Card

report:  "I am not trying to infer [*sic*] the clear floor space is not provided, I am saying that the

wall is necessary to aid a disable [*sic*] person to gain access to exit the toilet room").

> None of the checkout aisles are designated with the International Symbol of

Accessibility or labeled with a sign advising that "this check stand to be open at all times."  ECF

No. 58-3 ¶ 2(g), 58-4 at 12-14.  However, all twelve checkout aisles are wheelchair accessible.

ECF No. 62-5 ¶ 16; ECF No. 65-3, Ex. 2 at 6-13.

> E. <u>ADA</u>

> The ADA, 42 U.S.C. § 12101, *et seq*., was adopted to address discrimination

against individuals with disabilities.  *Chapman v. Pier 1 Imports*, 631 F.3d 939, 945 (9th Cir.

2011).  Title III of the Act, which applies to places of public accommodation, requires owners,

lessors or lessees of such facilities, built or altered after 1993, to ensure that the facilities are

"readily accessible to and usable by individuals with disabilities, including individuals who use

wheelchairs." 42 U.S.C. § 12183(a)(2); *Rush v. Kim*, __ F. Supp. 2d __, 2012 WL 6184038, at

*2 (C.D. Cal. Dec. 10, 2012). "In general, a facility is 'readily accessible to and usable by

individuals with disabilities' if it meets the requirements promulgated by the Attorney General in

the 'ADA Accessibility Guidelines' or 'ADAAG,' which is essentially an encyclopedia of

design standards." *Oliver v. Ralphs Grocery Co*., 654 F.3d 903, 905 (9th Cir. 2011); *Kohler v.*

*Flava Enter., Inc*., 826 F. Supp. 2d 1221, 1226 (S.D. Cal. 2011). These guidelines were

developed in 1991 by an independent federal agency and were adopted and promulgated as

regulations by the Department of Justice (hereafter "1991 Standards"). *Rush*, 2012 WL6184038,

at *2. The Access Board revised the standards in 2004 and in 2010 the DOJ adopted these

standards as enforceable regulations (hereafter "2010 Standards"). *Scherr v. Marriott Int'l.*, 703

F.3d 1069, 1076 (9th Cir. 2013). As of March 15, 2012, new construction or alterations must

comply with the 2010 Standards. *Id*., 28 C.F.R. § 36.406(a)(3); *see Kohler v. Presidio Int'l, Inc*.,

No. CV 10-4680 PSG (PJWx), 2013 WL 1246801, at *11 (N.D. Cal. Mar. 25, 2013). Before that

date, both the 1991 and the 2010 Standards can be used to evaluate compliance. *Scherr*, 703

F.3d at 1076; *Kohler v. Flava Enter.*, 826 F. Supp. 2d at 1229.

   "To prevail on a Title III discrimination claim, the plaintiff must show that

(1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that

owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied

public accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc*.,

481 F.3d 724, 730 (9th Cir. 2007). Kohl's does not challenge plaintiff's showing on the first two

elements, but argues that because there was no violation of the accessibility standards, Feezor

was not denied public accommodation on the basis of his disability.

   i. Toilet Seat Cover Dispenser

   Regarding this feature, plaintiff has submitted only his own declaration, averring

that "[t]he disposable seat cover dispenser in the men's restroom is mounted too high, making it

difficult for me to reach and use." Decl. of Lary Feezor, ECF No. 58-6 ¶ 6(a). Plaintiff's expert

1   Joe Card does not address this claim in either of his submissions.  *See* ECF No. 58-3 & Exhibits;

2   Second Decl. of Joe Card, ECF No. 63-1.  Kohl's has provided a picture with a measuring tape

3   extended in front of the dispenser, suggesting that the top of the dispenser is no more than 40

4   inches from the ground.  ECF No. 62-5 ¶ 22; ECF No. 65-3, Ex. 2 at 14.  It also suggests that the

5   dispenser was replaced during the course of this litigation.  ECF No. 62-5 ¶ 22.

6        The 1991 Standards include space allowances and reach ranges for people in

7   wheelchairs and provide for objects requiring a forward reach:  "the maximum high forward

8   reach allowed shall be 48 in . . . ." 1991 ADAAG § 4.2.5.  Similarly the 2010 Standards provide

9   for a 48 inch maximum above the ground for an unobstructed forward reach.  2010 ADAAG §

10  308.2.  Plaintiff has included a picture of the toilet seat cover dispenser in his memorandum of

11  points and authorities, arguing that it is "obvious" from the photograph that the dispenser is

12  mounted too high.  ECF No. 58-1 at 13-14.  As he has not borne his burden of showing a

13  violation of the ADAAG, his motion for summary judgment as to this alleged barrier is

14  DENIED.  *Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1048 (9th Cir. 2008).

15       Because Kohl's evidence may be interpreted as showing that a formerly non-

16  compliant dispenser has been remounted to comply with the ADA, it is entitled to summary

17  judgment on this point: because a person may seek only injunctive relief under Title III of the

18  ADA, the action becomes moot if the facilities are brought into ADA compliance during the

19  course of the litigation.  *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).  Moreover

20  defendant's motion may be granted because plaintiff has not satisfied his initial burden of

21  showing an ADA violation.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("the burden

22  on the moving party may be discharged by 'showing'–-that is, pointing out to the district court–-

23  that there is an absence of evidence to support the nonmoving party's case").  Kohl's motion for

24  summary judgment of the ADA claim as to the toilet seat cover dispenser is GRANTED.

25  /////

26  /////

ii.  Toilet Paper Dispenser

Plaintiff argues that the location of the toilet paper dispenser does not comply with either the 1991 or 2010 Standards, while Kohl's argues that the placement satisfies both standards.

Section 4.16.6 of the 1991 ADAAG provides that "[t]oilet paper dispensers shall be installed within reach, as shown in Fig. 29(b)."  That illustration shows a toilet paper dispenser mounted on a side wall without providing specific measurements from the back wall or from the toilet to the dispenser, though it does show that the dispenser should be mounted 19 inches above the floor.  Section 604.7 of the 2010 ADAAG provides that toilet paper dispensers shall be 7 inches minimum and 9 inches maximum in front of the water closet, measured to the centerline of the dispenser.

Plaintiff argues that the placement of toilet paper dispensers is prescribed by Figure 30(d) of the 1991 Standards.  Section 4.17.1 provides that accessible toilet stalls "shall meet the requirements of 4.17."  Section 4.17.3 further specifies that "[t]he size and arrangement of the standard toilet stall shall comply with Fig. 30(a)."  That illustration does not show a toilet paper dispenser or otherwise discuss toilet paper dispensers.  Figure 30(d) shows a measurement of 36 inches, which appears to be pointing to a toilet paper dispenser, but also appears to refer to the grab bar.  As Section 4.17.6 provides that grab bars must comply with Figures 30(a), (b), (c) and (d), it is most reasonable to interpret the illustration in 30(d) as applying the 36 inch measurement to the placement of grab bars rather than to toilet paper.  *See generally Strong v. Walgreen Co.*, No. 09cv611 WQH (BLM), 2011 WL 5374125, at *9 (S.D. Cal. Nov. 3, 2009) (rejecting the claim that the 1991 ADAAG provide measurements for installing toilet paper dispensers).  Accordingly, the court need not consider whether the placement of the toilet paper satisfies the 2010 Standards or even whether the "dispenser" is the spindle that holds an individual roll of toilet paper or the device and its housing in which one or more rolls of toilet paper are mounted.  As plaintiff says only that the dispenser, whatever its definition, was

10

1   difficult to reach, not that it was out of reach, his motion for summary judgment on this issue is

2   denied and Kohl's is granted.  *See also Wilson v. Norbeck*, CIV S 04 0690 DFL JFM, 2005 WL

3   3439714, at *4 (E.D. Cal. 2005) (rejecting similar claims about placement of toilet tissue

4   dispenser and denying plaintiff's motion for summary judgment despite his claim that dispenser

5   was "difficult for him to reach").

6               iii.  Door Clearance

7               Plaintiff argues that the exit door from the restroom does not comply with Section

8   4.13.6 of the 1991 Standards, which requires there to be a wall of at least eighteen inches on the

9   strike side of the door, permitting a person in a wheelchair to maneuver into position and brace

10  himself against the wall while opening the door.  Relying on *Rush v. Denco Enterprises.*, 857 F.

11  Supp. 2d 969 (C.D. Cal. 2012), he argues it is "settled law" that the ADA standards require at

12  least 18 inches on the strike side wall of a pull door.  ECF No. 58-1 at 15.  Kohl's asserts that

13  *Denco Enterprises* is not controlling because it is not really a ruling on the merits, but rather a

14  grant of summary judgment following defendant Denco's failure to oppose Rush's motion.  It

15  also cites cases, litigated by the law firm representing Feezor in this action, which have rejected

16  Feezor's position.

17              Plaintiff's counsel does not address, let alone acknowledge, these cases in reply.

18  It is one thing for counsel to omit citation to cases he has litigated and lost, but another more

19  egregious matter to simply ignore them and claim the law is settled in the face of contrary

20  information.  *See, e.g., Golden Eagle Distrib.Corp. v. Burroughs Corp*., 801 F.2d 1531, 1542

21  (9th Cir. 1986) (while a lawyer may not be subject to Rule 11 sanctions for failing to cite adverse

22  authority, "a lawyer should not be able to proceed with impunity in real or feigned ignorance of

23  authorities which render his argument meritless").

24              In reply, Feezor relies on a live demonstration he says he gave to the magistrate

25  judge who presided over the unsuccessful settlement conference in this case, arguing that this

26  shows he needs an eighteen inch long unobstructed wall on the strike side of the door so he can

1  brace himself against that wall while swinging the door open.  ECF No. 63 at 8.  His

2  demonstration is not evidence in this case.  While Feezor's argument conflates his difficulties in

3  opening doors with the ADAAG requirements, it is the ADAAG requirements themselves that

4  control resolution of this question.

5       Section 4.13.6 of the 1991 Standards provides: " Minimum maneuvering

6  clearances at doors that are not automatic or power-assisted shall be as shown in Fig. 25. The

7  floor or ground area within the required clearances shall be level and clear."  Figure 25, entitled

8  Maneuvering Clearances at Doors, includes illustrations for several kinds of doors.  Figure 25(a)

9  shows the required clearance for a front approach to a pull side door:



17       According to the 1991 ADAAG Graphic Conventions, a dotted line represents the

18  boundary of clear floor area, while a solid line is a "typical dimension line showing US

19  customary units (in inches) above the line . . . ."  *See* 1991 ADAAG § 3.1, Table 1.  Relying on

20  these conventions, Feezor argues that because the dotted lines in Figure 25(a) show the required

21  clear floor space, the dimension line defining the maneuvering clearance must refer to the wall.

22  Two courts have rejected this position, in cases plaintiff does not cite.

23       In *Kohler v. Bed Bath & Beyond of California LLC*, No. 11-4451 RSWL (Spx),

24  2012 WL 3018320 (C.D. Cal. Jul 23, 2012) (*Kohler II*), a court rejected the arguments plaintiff

25  makes here.  As that court observed, "the word 'wall' is absent from Fig. 25(a) and the

26  accompanying notes.  However, the floor area is explicitly referenced in ADAAG § 4.13.6,

which Fig. 25 is attached to."   *Id.* at *5.   The court also recognized that the eighteen-inch space is called "maneuvering space," which suggests the space needed for a wheelchair to move so as to navigate out the door.   *Id.*; *see also Kohler v. Bed Bath & Beyond of Cal. LLC*, No. EDCV 11-01246 VAP (Opx), 2012 WL 2449928, at *12 (C.D. Cal. June 27, 2012) (*Kohler I*) (concluding that "§ 4.13.6 is unrelated to wall length. . . ." ).   This court cannot improve upon these observations, and agrees with them.

Feezor's arguments fail for additional reasons.   First, Section 4.13.6 provides that the floor or ground area within the clearance shall be level and clear.   Feezor has not explained how a wall can have a floor or ground area within it.   Second, because the section refers to the floor area within the clearance, it must mean more than the floor area itself.   Third, the solid dimension line in the illustration uses the door itself at its starting point rather than the strike side of the door, suggesting that the line refers to an area outside the path of the door's swing, which will provide clear maneuvering room for a person in a wheelchair.   The eighteen inch clearance thus refers not to the wall but to a clear area not only on the floor but in the air space of the room, free of protrusions or other that which would prevent a wheelchair user from moving freely.

Plaintiff argues that this court must give *Chevron*[2] deference to a checklist issued by the Department of Justice, which interprets Section 4.13.6 as requiring eighteen inches of wall space abutting the strike side of the door.   ECF No. 63 at 10.   This checklist describes itself as "a self-help survey that owners . . . of lodging facilities can use to identify ADA mistakes at their facilities."   ADA Checklist for New Lodging Facilities (May 18, 2005) at 1.   As the checklist was not "arrived at after . . . a formal adjudication or notice-and-comment rulemaking" and "lack[s] the force of law," it is not entitled to *Chevron* deference.   *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000); *see also Lockyer v. Cnty. of Santa Cruz*, No. C-054708 RMW,

---

[2]   *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984).

1  2006 WL 3086706, at *3 (N.D. Cal. Oct. 30, 2006) (rejecting *Chevron* deference for a similar

2  handbook).  Moreover, the checklist provides only little support for plaintiff's position: although

3  it does say that there should be eighteen inches of wall space at the latch side of the door, it

4  recognizes that the purpose of the required clearance is to ensure there is "adequate room for a

5  person who uses a wheelchair to approach the restroom door from the pull side and pull it open

6  without hitting the wheelchair."  Checklist, § VB.  It says nothing about clear space on a wall

7  necessary for bracing, but rather recognizes the need for a specific area free of obstructions from

8  the floor up.

9          Here, the picture of the restroom door shows an unobstructed area at the strike

10  side of the door.  ECF No. 58-4 at 9.  Feezor's motion for summary judgment on this issue is

11  DENIED; Kohl's is GRANTED.

12          iv.  Check-out Aisles

13          Feezor argues that none of the check-out aisles at Kohl's were labeled with the

14  International Symbol of Accessibility (ISA) as required by Section 7.3 of the 1991 Standards.

15  Kohl's responds that because all of its check-out aisles are wheelchair accessible, no sign is

16  required under § 216.11 of the 2010 Standards.  That section provides, "where more than one

17  check-out aisle is provided, check-out aisles complying with 904.3 shall be identified by the

18  International Symbol of Accessibility . . . . [¶] **EXCEPTION**: Where all check-out aisles serving

19  a single function comply with 904.3, signs complying with 703.7.2.1 shall not be required."

20  Section 904.3 provides that "[t]he counter surface height shall be 38 inches . . . maximum above

21  the finish floor or ground.  The top of the counter edge protection shall be 2 inches . . . maximum

22  above the top of the counter surface on the aisle side of the check-out counter."  It also specifies

23  that aisles shall comply with Section 403, which requires the aisle by the counter to be at least 36

24  inches wide.

25          In connection with its combined motion for summary judgment and opposition to

26  Feezor's motion, Kohl's has provided pictures of its check-out aisles, showing a row of uniform-

1   appearing aisles, along with pictures of measurements of two of the aisles, showing that the

2   counters are approximately 35 inches tall and that the aisles are approximately 60 inches wide.

3   ECF No. 65-3 at 6-14.  Kohl's has thus presented evidence showing that its check-out aisles

4   meet the 2010 standards.

5         In reply, Feezor argues that Kohl's, which was built in 2004, should not be able to

6   escape liability by relying on the 2010 standards.  As noted above, however, Kohl's compliance

7   with the 2010 standards is sufficient.  *See Kohler v. Flava Enter.*, 826 F. Supp. 2d at 1229.

8         Feezor also argues that Kohl's has not borne its burden because it has not shown

9   that all the aisles have the same measurements and meet other requirements for the floor

10  surfaces, among other things.  However, as noted above, "the burden on the moving party may

11  be discharged by 'showing'–-that is, pointing out to the district court–-that there is an absence of

12  evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 323.  By presenting

13  a *prima facie* case of compliance with the 2010 Standards, Kohl's has demonstrated that Feezor

14  has no basis for injunctive relief.  As Feezor has not rebutted this showing, his motion for

15  summary judgment on this point is DENIED; Kohl's is GRANTED.

16     F.  State Law Claims

17        As the court has granted Kohl's motion for summary judgment as to all of

18  plaintiff's federal claims, only state law claims remain.  "A federal district court with power to

19  hear state law claims has discretion to keep, or decline to keep, [the state law claims] under the

20  conditions set out in [28 U.S.C.] § 1367(c)." *Acri v. Varian Associates*, *Inc.*, 114 F.3d 999,

21  1000, *as supplemented by* 121 F.3d 714 (9th Cir. 1997).  One such condition is when "the district

22  court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3).

23  The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law

24  claims.

25  /////

26  /////

II.  PLAINTIFF'S MOTION TO DISMISS

On January 16, 2013, after the summary judgment motions had been submitted, Feezor moved to dismiss his own complaint against BBB, arguing that the court lacks subject matter jurisdiction because his answers at a deposition may have destroyed standing.  ECF No. 68.  In its opposition dated February 15, 2013, BBB disputes the facts regarding standing and maintains the court retains jurisdiction.  (ECF No. 71.)  In his reply dated February 22, 2013, plaintiff "clarifies" he believes jurisdiction persists, but merely sought to bring the matter to the court's attention.  (ECF No. 72.)

The court heard argument on the motion on March 1, 2013.  Although Lynn Hubbard III had signed the motion and the reply, he did not appear; rather, Kristal McCain appeared for plaintiff.  Ms. McCain repeated that the Hubbard Law Firm, known as the Disabled Advocacy Group (DAG), had not filed the motion because it actually wanted to dismiss the action, but rather because Feezor's answers at his deposition undercut his standing.

The court issued an order to show cause, directing Lynn Hubbard to appear personally to explain the conflicting positions taken in the motion and reply and permitting Feezor to present evidence, if he chose, on the question of standing.  ECF No. 73.

On March 26, 2012, Lynn Hubbard III and Scottlyn Hubbard IV appeared along with plaintiff Lary Feezor, who did testify.  Matthew Kenefick appeared for BBB.

A.  Background

On January 19, 2012, when Feezor filed suit against BBB, and on February 16, 2012, when BBB filed its answer the parties agreed that the court had subject-matter jurisdiction. ECF Nos. 1, 17, 68 at 4; ECF 71 at 5-6.  However on December 6, 2012, the parties conducted a deposition in Stockton.  During the deposition, when asked if he would ever return to BBB, Feezor replied that not only did he not intend to return, he did not intend to return to any Bed Bath & Beyond store at any point in the future.  ECF No. 68, Ex. A at 4-5.

/////

On January 16, 2013, Feezor moved to dismiss for lack of subject matter jurisdiction. ECF No. 68. Plaintiff explained that his outburst at the deposition was the result of an antagonistic strategy employed by defense counsel, and that following the deposition he had offered voluntarily to dismiss the case, only to be rebuffed with a demand for $41,128.22 in attorneys' fees. *Id.* at 2. Plaintiff therefore brought the matter to the court, although his motion to dismiss did not clearly acknowledge that the evidence demonstrated his lack of standing or that he really had no intention of returning to the store following his treatment. *Id.*

On February 16, 2013, BBB opposed the motion to dismiss. The essence of BBB's position is that plaintiff has manufactured a standing issue in an attempt to escape the lawsuit before attorneys' fees could be imposed. ECF 71 No. at 5. To prove this point, BBB devoted most of its brief to asserting the frivolity of some of plaintiff's claims and arguing that a recent state court case mandated an award of attorneys' fees. *Id.* at 2-5. Additionally, it suggested that a defect in standing might be rescued through supplemental jurisdiction. *Id.* at 6.

In reply, plaintiff clarified that he did not want his suit dismissed and desired to pursue his claims against defendant. ECF No. 72 at 2. The purported reason for plaintiff's motion to dismiss was that, in light of the deposition, he felt an obligation to present the matter to the court for resolution. *Id.* The remainder of plaintiff's reply was devoted to refuting defendant's allegations regarding his motives for bringing the motion to dismiss. *Id.* at 2-5. Accompanying plaintiff's reply was a declaration affirming plaintiff's intent to return to BBB. *Id.*, Decl. Lary Feezor.

Because of the conflicting facts and motivations apparent in the paper record, the court determined that according plaintiff an evidentiary hearing was warranted. At the hearing, Feezor chose to testify. He said he was upset because the deposition had been scheduled at a Howard Johnson's in Stockton with serious accessibility problems: it did not have a handicapped room available for him even though he had called in advance; he was unable to use the toilet and so had to empty the waste from his catheter in the sink; and the disabled parking

1   was inadequate.  He became more upset when BBB's lawyer asked him about cases brought by

2   Chris Kohler against BBB.  He insisted that despite his outburst to the contrary at deposition, he

3   intends to return to BBB, as he stops in Stockton several times a years during his trips from his

4   home in Weaverville to the V.A. Hospital in Palo Alto.  Reporter's Transcript of March 26, 2013

5   (3/26 RT) at 6-13.

6            At the court's request, plaintiff has lodged a copy of the deposition transcript.  It

7   shows that at the beginning of the deposition, plaintiff chastised BBB's counsel for scheduling

8   the deposition at a motel that was not accessible to the disabled.  He outlined some of the

9   problems with the facility that he later recounted at the evidentiary hearing.  Deposition of Lary

10  Feezor (Feezor Depo.) at 6-7.  In addition, the transcript shows that BBB's counsel did ask

11  Feezor about his friendship with Chris Kohler and his awareness of the results of Kohler's

12  litigation against BBB in Southern California.  Although it is often difficult to discern nuance

13  and tone from a two-dimensional transcript, it does not appear that BBB's lawyer was badgering

14  plaintiff.  Feezor Depo. at 71-80.  Plaintiff's lawyer did object to the questions on a variety of

15  grounds, but did not claim that his client was being harassed.

16        B.  Standard

17            The court has no jurisdiction to hear a case in which the plaintiff lacks standing.

18  *Bender v. Williamsport Area School District*, 475 U.S. 534, 541-42 (1986).  "The defense of lack

19  of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to

20  dismiss an action whenever it appears that the court lacks jurisdiction."  *Augustine v. United*

21  *States*, 704 F.2d 1074, 1077 (9th Cir. 1983).  "In ruling on a challenge to subject matter

22  jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule

23  on that issue prior to trial, resolving factual disputes where necessary."  *Carijano v. Occidental*

24  *Petroleum Corp.*, 686 F.3d 1027, 1032 (9th Cir. 2012) (quoting *Augustine*), *cert. denied* 2013

25  WL 1704717 (Apr. 22,  2013).

26  /////

18

C.  Analysis

The court has found no authority for the proposition that a plaintiff may bring a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure against his own claim. Although Rule 12 refers generally to parties, the context of Rule 12, which refers to the timing of responsive pleadings (FED. R. CIV. P. 12(a)) and to the presentation of defenses (FED. R. CIV. P. 12(b)), makes clear that Rule 12 is restricted to parties responding to claims against them. Although Rule 12(h)(1) permits a party to bring a Rule 12(b)(1) motion at any point and the court may consider jurisdiction on its own motion under Rule 12(h)(3), nowhere is it suggested that the opportunity to bring a Rule 12(b)(1) motion is extended to the party presenting the claim in the first place.

At the evidentiary hearing, Scottlyn Hubbard claimed that before he drafted the motion, he was aware of *Napoleon Hardwoods, Inc. v. Professionally Designed Benefits, Inc.*, 984 F. 2d 821 (7th Cir. 1993), which he described as authority for the proposition that a plaintiff may file a 12(b)(1) motion to dismiss its own claim.  He also relied on the Rutter's Guide, noting that a heading in its treatise on *Federal Civil Procedure Before Trial* said that both plaintiff and defendant could bring a motion to dismiss under Rule 12(b)(1).  3/26 RT at 20.

It is true that the chapter on attacking the pleadings in Rutter's has a heading reading "Either party may file Rule 12(b)(1) motion."  SCHWARZER, ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL ¶ 9:77.5 (The Rutter Group 2013).  A heading in a practice guide is hardly persuasive authority.

Rutter's cites *Napoleon Hardwoods* as authority for its assertion.  In that case, the Seventh Circuit said it would entertain a jurisdictional challenge raised by the defendant who had removed the case from state court, noting that "even the party which invoked federal jurisdiction may later challenge it . . ." even though the practice was "unseemly."  *Id*. at 822. The Seventh Circuit did not discuss the mechanism by which the defendant had raised the issue and so did not hold that it was proper for a plaintiff to bring a 12(b)(1) motion to dismiss its own

1  case.  And while this court agrees that "[l]ack of subject matter jurisdiction may be challenged

2  by either party or raised sua sponte by the court," *Morgan Hill Concerned Parents Assoc. v.*

3  *California Dept. of Educ.*, No. 2:11–cv–3471–KJM–AC, 2013 WL 1326301 (E.D. Cal. Mar. 29,

4  2013), this does not mean that plaintiff's filing a Rule 12(b)(1) motion to dismiss his own case

5  nearly a year after a defendant has filed an answer is the proper way to raise such a challenge.

6  Given the structure of the rule itself, the lack of authority, and the timing of plaintiff's motion,

7  this court concludes that plaintiff's motion here is not properly based on Rule 12(b)(1).

8          Some courts have concluded that using Rule 41 to dismiss for lack of subject

9  matter jurisdiction also is improper.  *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*, 305 F.

10  Supp. 803, 808-09 (S.D.N.Y. 1969) (*cited with approval in Wilkinson v. D.M. Weatherly Co.*,

11  655 F.2d 47, 49 (5th Cir. 1981)); *Timbisha Shoshone Tribe v. Kennedy*, No. CV F 09-1248 LJO

12  SMS, 2010 WL 582054 (E.D. Cal. Feb. 18, 2010) (*citing Crawford v. F. Hoffman-La Roche Ltd.*,

13  267 F.3d 760, 767 (8th Cir. 2001)).  These courts reason that Rule 41 is not applicable because a

14  dismissal under that rule is permissive and may be accompanied by such conditions as the court

15  deems proper, while a dismissal for lack of subject-matter jurisdiction is mandatory and the

16  conditions the court may impose are more restricted in accordance with 28 U.S.C. § 1919.  *Hylte*

17  *Bruks*, 305 F. Supp. at 808-09.  This reasoning is persuasive.

18          Yet the court "ha[s] a duty to establish subject matter jurisdiction over the []

19  action sua sponte." *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th

20  Cir. 2004).  Accordingly, because the parties have raised the issue, the court will consider the

21  matter regardless of procedural defects in the motion.

22          Plaintiff's initial brief proposes that his statement that he did not intend to return

23  to defendant's property destroyed subject matter jurisdiction.  In support of this, plaintiff cites

24  *Smyth v. Super 8 Motel Tahoe*, CIV S 00-1568 WBS/JFM, 2002 WL 32962296 (E.D. Cal. June

25  11, 2002) and *Feezor v. Carolina Lopez De-Jesus*, 439 F. Supp. 2d 1109 (S.D. Cal. 2006).

26  /////

1    Plaintiff is correct that courts, including this court, have dismissed cases for lack

2    of standing where the plaintiff does not intend to return to the defendant's property.  However, a

3    court is not obliged to take the facts as they are presented by a single party, but may resolve

4    factual disputes pertaining only to jurisdiction prior to trial.  *Carijano*, 686 F.3d at 1032.  A

5    plaintiff's statement of lack of intent to return that undermines standing is ordinarily highly

6    convincing evidence.  *See Smyth, supra*, ECF No. 39; *Feezor v. Carolina Lopez De-Jesus*, No.

7    04 CV 1954 JAH (JFS), ECF 75 (S.D. Cal. 2006).

8    In *Smyth*, plaintiff rented a room at the Super 8 Motel only to discover that the

9    door to the bathroom was too narrow to allow him to enter in his wheelchair.  *Smyth*, *supra*, ECF

10   39 at 1.  Yet in depositions Smyth revealed he had taken offense as a result of his stay at the

11   motel, because the wheelchair-accessible bathrooms "should have been there in the first place,"

12   and therefore planned to purposefully avoid the motel in the future.  *Id.* at 4.  The court granted

13   defendant's motion for summary judgment, citing Smyth's lack of standing.  *Smyth*, 2002 WL

14   32962296, at *1.

15   In *Carolina*, the plaintiff visited defendant's 7-Eleven and found a number of

16   violations of the ADA.  Defendants moved for summary judgment, arguing both that they had

17   mooted the case by remedying the violations and that during depositions plaintiff had asserted he

18   would never patronize the store again, removing standing.  *Carolina*, *supra*, ECF 75 at 5.  At

19   plaintiff's deposition, defense counsel asked plaintiff whether he had returned to the 7-Eleven

20   since his second visit.  *Id.* at 5-6.  Plaintiff responded that he had not been to the 7-Eleven, and

21   then volunteered that he would not return.  *Id.*  Defense counsel then asked whether plaintiff

22   would not return even if all barriers to access were removed, and plaintiff responded that he

23   would not return even in that case.  *Id.* at 6.  Following the deposition, defense counsel

24   apparently made plaintiff aware of their intent to argue lack of standing, for the court found the

25   motion for summary judgment "was on the table."  *Id.* at 9.  Knowing that a summary judgment

26   motion was pending, plaintiff moved to correct his testimony by changing the meaning of

21

plaintiff's statements to assert he would return to the 7-Eleven after the violations were fixed.
*Id.* at 6.  However, plaintiff had elsewhere in the deposition stated he did not plan to return to the
store, and did not amend this testimony, perhaps as a result of defense counsel's failure to
mention it.  *Id.* at 7, 10.  The court concluded that if the record stood without the proposed
corrections plaintiff would lack standing.  *Id.* at 7-8.  Because *Hambleton Bros. Lumber Co. v.
Balkin Enterprises, Inc.*, 397 F.3d 1217, 1224 (9th Cir. 2005) prevented substantive amendments
to the record, the court concluded plaintiff could not make the proposed corrections to the
record.  (*Id.* at 8.)

*Carolina*, although more similar to this case than *Smyth*, is also distinguishable.
In *Carolina,* only plaintiff disputed the veracity of the deposition statements.  (ECF 71 at 5; ECF
72 at 5.)  However, in the present case defendant also disputes the statement, which distinguishes
the cases.

The court accepts plaintiff's testimony at the evidentiary hearing that he does
intend to return to BBB and that he wishes to proceed with the lawsuit, and finds neither *Smyth*
nor *Carolina Lopez De-Jesus* controlling.  The court thus denies the motion brought by
plaintiff's counsel, its procedural irregularities noted.

IV.  THE ORDER TO SHOW CAUSE

In its order to show cause the court directed Lynn Hubbard III to show cause why
he should not be sanctioned for his actions in connection with the motion to dismiss.  As noted
above both Lynn Hubbard and his son Scottlyn Hubbard IV appeared.  Scottlyn Hubbard said he
"called the legal shots" while Lynn Hubbard handled factual matters. 3/26 RT 15.  Lynn
Hubbard explained that although he signed the motion he did not write it, but asked others to do
so.  *Id*. at 17.  Scottlyn Hubbard described the motion as a collaborative effort among himself,
Lynn Hubbard and Kristal McCain.  *Id*. at 21.

When asked about the difference between the reply and the motion, Lynn
Hubbard said he would not characterize it as an 180 degree change of position, because he

believed that with Feezor's deposition transcript, the case became a losing one, which would be a waste of time to pursue. *Id*. at 18.

Scottlyn Hubbard claimed "every time" opposing counsel had caused a client to lose his temper during a deposition and say he would not return to the defendant business, the office filed a motion to dismiss, because courts had dismissed cases in these circumstances. *Id*. at 22. Lynn Hubbard, on the other hand, said that only once before had Feezor been goaded into saying he had no plans to return to the business and in that case, the issue of standing was resolved as part of a motion for summary judgment. *Id*. at 16.

Finally, even though the moving papers in this case described "being-*Smythed*" as a well-known and expected tactic, Scottlyn Hubbard said his firm does not prepare young lawyers for this tactic and that the lawyer[3] who appeared with Feezor at his deposition, "regrettably, lacked the experience to know that you need to shore up the record." *Id*. at 22.

A court has inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc*., 501 U.S. 32, 44–45 (1991). Sanctions under the court's inherent authority must be based on a determination that counsel "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Roadway Express, Inc. v. Piper*, 444 U.S. 752, 766 (1980). Although a wide variety of conduct may be deemed tantamount to bad faith, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44; *see, e.g., Haeger v. Goodyear Tire and Rubber Co*., __ F. Supp. 2d ___, 2012 WL 5896190, at *34 (D. Ariz. Nov. 8, 2012) (providing examples of actions found to be undertaken in bad faith or tantamount to bad faith). In this case the court declines to undertake an inquiry into Lynn Hubbard's bad faith, finding instead that he has violated Rule 11 of the Federal Rules of Civil Procedure.

/////

---

[3] Scottlyn Hubbard could not recall the young man's name but said he called the lawyer "Kush."

Under Rule 11, by signing a document, an attorney certifies that (1) he has read the pleadings or motions he filed and (2) the pleading or motion is "well-grounded in fact," has a colorable basis in law, and is not filed for an improper purpose. FED. R. CIV. P. 11; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994). The Rule requires that the lawyer undertake "an inquiry reasonable under the circumstances" to determine whether his legal contentions are "warranted by existing law" and that his factual claims either "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation." FED. R. CIV .P. 11(b). When considering apparent Rule 11 violations, the court utilizes an objective standard of reasonable inquiry, which does not require a finding of bad faith. *Chamber*s, 501 U.S. at 47; *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986) (concluding that subjective bad faith is not an element under Rule 11), *overruled on other grounds, Cooter & Gell,* 496 U.S. at 399. Accordingly, a "subjective intent . . . to file a meritorious document is of no moment." *Zaldivar,* 780 F.2d  at 830.

On the record before it, the court finds that plaintiff's motion to dismiss was without factual support. As Feezor averred in the declaration submitted with the reply and as he testified in this court, his disavowal of any intention of returning to BBB was the product of frustration and did not represent his true intention. Reasonable investigation would have disclosed this and reasonable research would have disclosed that if BBB raised Feezor's standing in a motion for summary judgment, he would not necessarily be "precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition . . . ." *Messick v. Horizon Indus., Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995). A reasonable attorney would not have filed a motion to dismiss an action his client had no real intention of dismissing and wished in fact to pursue. *See Polar Intern. Brokerage Corp. v. Reeve*, 196 F.R.D. 13, 18 (S.D.N.Y. 2000) (stating that for an attorney to change positions or take a position adverse to his clients' interests might subject him to Rule 11 sanctions). The motion is frivolous.

1    A Rule 11 sanction may include an order that a penalty be paid into the court.

2  *Lodi Memorial Hosp. Ass'n, Inc. v. Blue Cross of Cal.*, No. CIV. 12–1071 WBS GGH, 2012 WL

3  3638506, at *12 (E.D. Cal. Aug. 22, 2012).  "A sanction imposed under this rule must be limited

4  to what suffices to deter repetition of the conduct or comparable conduct by others similarly

5  situated."  FED. R. CIV. P. 11(c)(4).  Accepting Scottlyn Hubbard's claim that every time an

6  unprepared attorney from the firm he and Lynn Hubbard III operate fails to protect the record

7  when a client says in deposition that he or she will not return to defendant's business, his firm

8  files a motion to dismiss despite the firm's ultimate belief in the lawsuit, the court concludes

9  there is a significant risk of repetition of conduct comparable to that taken in this case.

10 Accordingly, a fine of $5,000.00 will be levied against Lynn Hubbard III as signatory on the

11 motion to dismiss, with no part of this amount assessed from or to be passed on to plaintiff Lary

12 Feezor.

13    IT IS THEREFORE ORDERED that:

14    1.  Plaintiff's motion for summary judgment is DENIED as to his ADA claims;

15    2.  Kohl's motion for summary judgment is GRANTED as to plaintiff's ADA

16 claims;

17    3.  The court DECLINES to exercise supplemental jurisdiction over plaintiff's

18 state law claims against Kohl's;

19    4.  Plaintiff's motion to dismiss is DENIED;

20    5.  Lynn Hubbard III is SANCTIONED in the amount of $5,000, payable to the

21 Clerk of the Court within fourteen days of the date of this order; and

22    6.  The Clerk of the Court is directed to send a copy of this order to the State Bar

23 of California, 180 Howard Street, San Francisco, California 94105.

24 DATED:  June 7, 2013.

25

26                                     UNITED STATES DISTRICT JUDGE