IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LARY FEEZOR,

        Plaintiff,                   No. CIV S 12-0156 KJM EFB

    v.

EXCEL STOCKTON, LLC, et al.,       ORDER

        Defendants.

_____/

        In January 2012, plaintiff Lary Feezor (Feezor or plaintiff) filed a complaint alleging he encountered barriers at a shopping mall in Stockton, California, including the following barriers at a store operated by defendant Bed, Bath and Beyond (BBB): there is insufficient strike side clearance on the swing door when entering the restroom, making it difficult for Feezor to pull open the door; the water closet stall door is not self-closing, making it difficult for Feezor to completely and properly close the door; the front roll of toilet tissue is mounted too far from the front of the water closet, making it difficult for Feezor to reach and use; the front roll of toilet tissue is mounted too far from the back wall, making it difficult for Feezor to reach and use; the pipes beneath the lavatory are incompletely wrapped, causing Feezor to risk burning his legs; and there is insufficient strike side clearance when exiting the restroom, making it difficult for Feezor to open the door. ECF No. 1 ¶ 33. He alleges these

1

failings violate the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, *et seq*.; the Disabled Persons Act, CAL. CIV. CODE § 54, *et seq*.; the Unruh Civil Rights, CAL. CIV. CODE § 51; and California Health and Safety Code § 19955, *et seq*.  ECF No. 1 at 45-50.

On May 31, 2013, BBB filed a motion for summary judgment asserting that the conditions plaintiff identified as barriers in his complaint no longer exist, or are not violations of law.  ECF No. 87-1 at 7.  BBB requests that upon the court's determination that plaintiff's ADA claims fail, the court decline to exercise supplemental jurisdiction over the state law claims.  ECF No. 87-1 at 15-18.

On June 14, 2013, plaintiff filed his opposition, asserting he has provided sufficient evidence to show barriers still exist at the BBB facility, and that the court should retain supplemental jurisdiction over his state claims because his federal ADA claims are not moot.  On June 21, 2013, defendant BBB replied, contending plaintiff's ADA claims lack merit and credible factual support.  The court submitted the motion without hearing.

After considering the parties' submissions, the court GRANTS BBB's motion for summary judgment on plaintiff's ADA claims regarding strike side clearance, location of the toilet tissue dispenser, and insulation wrapping of the undersink pipes, and DENIES BBB's motion for summary judgment on plaintiff's ADA claim regarding the self-closing stall door.  Because a federal claim remains, the court DENIES BBB's request to dismiss plaintiff's state law claims.  The court also DENIES BBB's request for severance of plaintiff's state law claims.  In the discussion that follows, the undisputed material facts are identified in the section setting forth the court's analysis.

I. THE MOTION FOR SUMMARY JUDGMENT

   A. Summary Judgment Standard

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

2

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

/////

/////

---

[1] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

B. <u>ADA</u>

The ADA, 42 U.S.C. § 12101, *et seq.*, was adopted to address discrimination against individuals with disabilities. *Chapman v. Pier 1 Imports*, 631 F.3d 939, 945 (9th Cir. 2011). Title III of the Act, which applies to places of public accommodation, requires owners, lessors or lessees of such facilities, built or altered after 1993, to ensure that the facilities are "readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183(a)(2); *Rush v. Kim*, 908 F. Supp. 2d 1117, 1119 (C.D. Cal. 2012). "In general, a facility is 'readily accessible to and usable by individuals with disabilities' if it meets the requirements promulgated by the Attorney General in the 'ADA Accessibility Guidelines' or 'ADAAG,' which is essentially an encyclopedia of design standards." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011); *Kohler v. Flava Enter., Inc.*, 826 F. Supp. 2d 1221, 1226 (S.D. Cal. 2011). These guidelines were developed in 1991 by an independent federal agency and were adopted and promulgated as regulations by the Department of Justice (hereafter "1991 Standards"). *Rush*, 908 F. Supp. 2d at 1119. The Access Board revised the standards in 2004 and in 2010 the DOJ adopted these standards as enforceable regulations (hereafter "2010 Standards"). *Scherr v. Marriott Int'l.*, 703 F.3d 1069, 1076 (9th Cir. 2013). As of March 15, 2012, new construction or alterations must comply with the 2010 Standards. *Id.*; *see Kohler v. Presidio Int'l, Inc.*, No. CV 10-4680 PSG (PJWx), 2013 WL 1246801, at *11 (N.D. Cal. Mar. 25, 2013); 28 C.F.R. § 36.406(a)(3). Before that date, both the 1991 and the 2010 Standards can be used to evaluate compliance. *Scherr*, 703 F.3d at 1076; *Kohler v. Flava Enter.*, 826 F. Supp. 2d at 1229.

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). BBB does not challenge plaintiff's showing on the first two

elements, but argues that Feezor's ADA claims fail because the conditions he identifies as barriers actually comply with ADA regulations, such that Feezor was not denied public accommodation on the basis of his disability. BBB also argues that even if the conditions once constituted barriers, they no longer do, so Feezor cannot seek injunctive relief, which is the only remedy available under the ADA.

II. EVIDENTIARY ISSUE:  FEEZOR'S DECLARATION

Under 28 U.S.C. § 1746, a matter may "be supported, evidenced, established, or proved by the unsworn declaration, . . . , in writing of such person which is subscribed by him, as true under penalty of perjury . . . ." 28 U.S.C.A. § 1746. To have evidentiary force, a declaration must be signed by the declarant. *Blumberg v. Gates*, No. CV 00-05607 GAF (AJWX), 2003 WL 22002739, at *1 (C.D. Cal. Aug. 19, 2003) ("The probative force of a declaration subscribed under penalty of perjury derives from the signature of declarant.").

Plaintiff Feezor's Declaration in Opposition to Defendant's Motion for Summary Judgment incorporates a footnote to the signature line indicating the signature was affixed by plaintiff's counsel, not by Feezor himself. ECF No. 91-2 at 4. This footnote states, "Feezor is currently hospitalized. Plaintiff's counsel wrote this declaration at his direction, and read the declaration to him in its entirety prior to obtaining Feezor's authorization to affix his signature." ECF No. 91-2 at 4. By providing this footnote explanation, plaintiff's counsel has avoided a misleading representation to the court that Feezor signed the document himself. This type of notice may be sufficient for attorneys when signing other types of documents on behalf of their clients. *See*, *e.g., Hallinan v. State Bar of Cal.*, 33 Cal. 2d 246, 249 (1948) (finding counsel's signing client's name on a settlement release was not objectionable conduct, but not informing defense counsel that client did not personally sign the release, as requested, was deceptive and punishable conduct); *Aronin v. State Bar of Cal.*, 52 Cal. 3d 276, 286-87 (1990) (attorney intentionally deceived and misled court by not providing an affidavit explaining why he signed his clients' names to the verification of their answer); *Hubbard v. Plaza Bonita, L.P.*, CIV.

09-1581-JLS WVG, 2011 WL 2433086 (S.D. Cal. June 13, 2011) *objections overruled sub nom. Hubbard v. Plaza Bonita, LP*, 09CV1581 JLS WVG, 2011 WL 5975378 (S.D. Cal. Nov. 29, 2011) (counsel's conduct of signing plaintiff's signature on settlement agreement without informing defense counsel that plaintiff did not sign herself was deceptive and punishable by referral to the Standing Committee on Discipline).

Here, even if Feezor directed his attorney to write the declaration, had the declaration read to him in its entirety, and authorized his attorney to affix his signature, this does not satisfy the requirement of 28 U.S.C. § 1746, that the declaration be subscribed by the declarant. Given that plaintiff is the declarant, not the attorney, "it is improper to represent to the Court that a declarant swears under penalty of perjury to the contents of a document the declarant never saw." *Valiavicharska v. Celaya*, CV 10-4847 JSC, 2012 WL 1016138, at *4 (N.D. Cal. Mar. 22, 2012).

The court disregards Feezor's declaration because it does not have evidentiary force without his own signature affixed.

III. ANALYSIS

    A. <u>Strike Side Door Clearance Entering Restroom Pull Side</u>

Plaintiff asserts that the restroom door in the BBB facility does not comply with the ADA requirements because it does not have eighteen inches of strike side clearance on the pull side and it does not have twelve inches of strike side clearance on the push side. Plaintiff argues that under both Section 4.13.6 of the 1991 Standards and Section 404.2.4 of the 2010 Standards, strike side clearance is not limited to clear floor and ground space, but rather refers to a wall length requirement as well. ECF No. 91 at 5. Plaintiff cites *Rush v. Denco Enterprises*, 857 F. Supp. 2d 969 (C.D. Cal. 2012), to support his interpretation of the strike side clearance as including a wall length requirement. ECF No. 91 at 10. Defendant BBB asserts that plaintiff's reliance on *Rush v. Denco* is misplaced given that the court's decision in that case was premised on defendant Denco's failure to oppose plaintiff Rush's summary judgment motion, as clarified

1  on reconsideration.  ECF No. 87-1 at 16 (quoting *Rush v. Denco,* 2012 WL 3206674, at *3 (C.D.
2  Cal. Aug. 3, 2012)*:* "This Court does not rule out the possibility that Defendant could have
3  succeeded on the merits had it made any substantive argument whatsoever at the time of
4  summary judgment.").
5     Section 4.13.6 of the 1991 Standards provides: " Minimum maneuvering
6  clearances at doors that are not automatic or power-assisted shall be as shown in Fig. 25. The
7  floor or ground area within the required clearances shall be level and clear."  Figure 25, entitled
8  Maneuvering Clearances at Doors, includes illustrations for several kinds of doors.  Figure 25(a)
9  shows the required clearance for a front approach to a pull side door, and uses both solid and
10  dotted lines, as well as a thick solid line:



18     According to the 1991 ADAAG Graphic Conventions, a dotted line represents the
19  "boundary of clear floor area," while a solid line is a "typical dimension line showing US
20  customary units (in inches) above the line . . . ."  *See* 1991 ADAAG § 3.1, Table 1.  The
21  conventions do not explain what a thick solid black line signifies.
22     Defendant BBB contends that Section 4.13.6 of the 1991 Standards pertains to
23  clear floor space to allow for maneuvering a wheelchair, and cites cases holding that strike side
24  clearance is unrelated to wall length.  ECF No. 87-1 at 15 (citing *Kohler v. Bed Bath & Beyond*
25  *of Cal. LLC*, No. EDCV 11- 01246 VAP (Opx), 2012 WL 2449928, at *12 (C.D. Cal. June 27,
26  2012) (*Kohler I*) and *Kohler v. Bed Bath & Beyond of California LLC*, No. 11-4451 RSWL

(Spx), 2012 WL 3018320 (C.D. Cal. Jul 23, 2012) (*Kohler II*)).  In *Kohler II*, a court rejected the plaintiff's interpretation and observed, "the word 'wall' is absent from Fig. 25(a) and the accompanying notes.  However, the floor area is explicitly referenced in ADAAG § 4.13.6, which Fig. 25 is attached to."  *Kohler II,* 2012 WL 3018320, at *5.  The court also recognized that the eighteen-inch space is called "maneuvering space," which suggests the space needed for a wheelchair to move so as to navigate out the door.  *Id.*; *see also Kohler I*, 2012 WL 2449928, at *12 (concluding that "§ 4.13.6 is unrelated to wall length. . . ." ).  In this case, in previously evaluating plaintiff's strike side clearance claims against defendant Kohl's, this court agreed with the observations in *Kohler I* and *Kohler II*, and held that the eighteen inch clearance refers not to a wall, but to a clear area on the floor and in the air space of the room so a person in a wheelchair can maneuver freely.

          Plaintiff requests that the court reconsider this issue, arguing a closer analysis of the 2010 Standards informs and supports his interpretation of the 1991 Standards as requiring eighteen inches of wall for maneuvering clearance.  ECF No. 91 at 16.  He says, first, the lack of a description for the solid black line in the 1991 ADAAG Graphic Conventions contributed to the court's decision in *Kohler I,* which stated "[if] the diagram referred to wall space, ADAAG would have defined the solid black line."  ECF No. 91 at 16.  Plaintiff argues that because the 2010 ADAAG Graphic Conventions, Figure 104, includes the description of a solid black line convention as representing "a wall, a floor, ceiling or other element cut in section or plan," the U.S. Department of Justice (DOJ) made precisely the type of correction *Kohler I* indicated it would make if plaintiff's interpretation of strike side clearance had been intended by the 1991 Standards.  ECF No. 91 at 16.  Moreover, the language in Section 4.13.6, that "the floor or ground area within the required clearance shall be level and clear," is omitted from Section 404.2.4, the Maneuvering Clearances provision of the 2010 Standards.  ECF No. 91 at 10-11, 16.  Plaintiff contends that this omission, plus the striking similarity between Figure 25(a) and Figure

/////

404.2.4.1(a), and given the description of the solid black line as representing a wall, all show his interpretation is correct under both the 1991 Standards and the 2010 Standards.

Plaintiff asserts that BBB's interpretation is incorrect given its reliance on old regulations, non-binding interpretative material, irrelevant state law regulations, and inadmissable expert testimony. Rather, according to the plaintiff, the 2010 Standards and the changes the DOJ made to these new standards, should control the outcome of this motion. ECF No. 91 at 19. Even if the court only applied the 2010 Standards, however, plaintiff's arguments still fail.

Section 404.2.4.1 states "[s]winging doors and gates shall have maneuvering clearances complying with Table 404.2.4.1"; this table provides that the minimum maneuvering clearance for a pull side door is eighteen inches parallel to the doorway, as shown in Figure 404.2.4.1(a). Figure 404.2.4.1(a) shows the required clearance for a front approach to a pull side door:



(a)
front approach, pull side

As in the 1991 Figure 25(a), in which the dotted line represents a "boundary of clear floor area," Figure 404.2.4.1(a) uses a dashed line that represents the "boundary of clear floor space or maneuvering clearance." This use of "or" in the 2010 Graphic Conventions description of dashed lines means that the maneuvering clearance is not the same as "clear floor space," but that it must refer to more than the floor area itself. However, the maneuvering clearance cannot be intended to include wall length, as plaintiff avers, because the accompanying text to Section 404.2.4.1 states "[m]aneuvering clearances shall extend the full width of the

doorway. . . . ," and the dashed line demarcating the maneuvering clearance boundary in Figure 404.2.4.1(a) continues across the doorway. Plaintiff has not explained how a wall can extend the full width of the doorway, under the 2010 Standards, or how a wall can have a floor or ground area within it, under the 1991 Standards. Moreover, in both illustrations, the dimension line uses the door itself as its starting point rather than the strike side of the door, suggesting that the line refers to an area outside the path of the door's swing, to provide clear maneuvering room for a person in a wheelchair. Under both the 1991 Standards and the 2010 Standards, maneuvering clearance refers to a clear area not only on the floor but in the air space of the room, free of physical hindrances or protrusions that would prevent a wheelchair user from maneuvering freely. Plaintiff's reference to the latch side of the door has the same meaning as the "strike-side," which plaintiff states originated as a colloquialism from wheelchair users' experience of striking the pull-side of the door with their wheelchairs, in order to get close enough to open it. ECF No. 91 at 9. However, this court interprets the "strike side" of a door as referring to the side on which the door opens, opposite the hinges. *See Kohler II*, 2012 WL 3018320, at *9 n.1.

Here, the picture of the BBB restroom door in the record shows an unobstructed area at the strike side of the door, sufficient to satisfy the minimum requirement of eighteen inches of maneuvering clearance. Decl. of Larry Wood, ECF No. 89-2, Ex. 2. Approximately four feet of strike side clearance is provided by the wide hallway adjacent to the restroom door. ECF No. 89 ¶ 5. BBB's motion for summary judgment on this issue is GRANTED.

B. Strike Side Door Clearance Exiting Restroom Push Side

There is no factual dispute about the physical characteristics of BBB's restroom door, rather, the parties dispute whether such characteristics mean the "door is equipped with both a latch and a closer," thereby triggering the requirement of twelve inches of additional clearance. The parties agree that the push side of BBB's restroom door does not provide twelve inches of maneuvering clearance. Plaintiff asserts that BBB's restroom exit, as a front approach to the push side of a door that has both a closer and latch, is required to have twelve inches of

strike side maneuvering clearance. ECF No. 91 at 13-14.  BBB counters that the restroom door does not have a latch mechanism, thus no additional clearance is required as shown in Figure 11B-26A of the 1991 Standards.  ECF No. 87-1 at 17.  Plaintiff contends that because the term "latch" is ambiguous in the 1991 Standards, meaning both a privacy latch mechanism and a door stop, the court should look at the usage of "latch" in the 2010 Standards for guidance on this issue.  ECF No. 91 at 13.  Referencing Table 404.2.4.1 of the 2010 Standards, plaintiff concludes "latch" is used to describe the stop that prevents a door from swinging in two directions.  ECF No. 91 at 13.  Plaintiff alleges that because BBB's restroom door has such a door stop and only five inches of strike side clearance instead of twelve, it violates the ADA.  ECF No. 91 at 13.

Plaintiff's argument that BBB's restroom door has a latch is unavailing, in part because he omits the text of Section 4.13.9, entitled "Door Hardware," which states "[h]andles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp . . . and does not require tight grasping . . . to operate."  Similarly, Section 404.2.7 of the 2010 Standards states "[h]andles, pulls, latches, locks, and other *operable parts* on doors . . . shall comply with 309.4 [Operation]." (emphasis in original).  In both standards, "latch" is included in a list of operable parts within the section that provides requirements to ensure disabled users are able to easily operate devices on doors.  Plaintiff has not explained how a disabled user would operate a door stop, or how a door stop would have an easy-to-grasp shape.  Given Section 4.13.9, the court does not adopt plaintiff's interpretation of "latch" to mean a door stop that prevents a door from swinging in both directions.

Here, the pictures in the record of the push side of the restroom door show a flat, metal plate without a latch.  Decl. of Khushpreet Mehton, ECF No. 91-4, Ex. D; ECF No. 89-2, Ex. 2.  There is no additional required clearance for front approaches to push side doors that do not have both a closer and a latch.  *See* 1991 ADAAG § 4.13, Figure 25(a); *see also* 2010 ADAAG Table 404.2.4.1.  With five inches of maneuvering space, BBB's restroom has more

/////

11

than the required strike side clearance for its front approach push side door without a closer and a latch. BBB's motion for summary judgement on this issue is GRANTED.

C. Self-Closing Stall Door

The ADA requires the accessible stall to have an "outward swinging, self-closing door." *See* 1991 ADAAG § 4.23.4; *see also* 2010 ADAAG § 604.8.1.2. Plaintiff contends BBB's restroom violates the ADA because the stall door is not self-closing. ECF No. 91 at 19. To support this contention, plaintiff provides a photograph taken in January 2012 that shows the stall door is ajar. ECF No. 91 at 19; Decl. of Lynn Hubbard ¶ 3, Ex. A. BBB asserts that the stall door has a mechanism to self-close, is self-closing, and even if the stall door did not self-close at one time, it currently does, depriving plaintiff of standing to assert this condition. ECF No. 87-1 at 18 (citing *Chapman v. Pier 1 Imports*, 631 F.3d 939, 945 (9th Cir. 2011).) BBB provides no facts to support its conclusory assertion that the stall door self-closes. BBB includes the *Kohler II* decision as Exhibit 2 to the Declaration of Matthew Kenefick but does not address how the decision in that case should control the decision here. In *Kohler II*, the plaintiff had provided a photograph showing the stall door left open, but the defendant's service technician averred the door was equipped with self-closing hinges, and the defense expert, a certified access specialist, looked at the technician's photographs and attested to the fact that door was self-closing. *Kohler II,* 2012 WL 3018320 at *4.

Here, BBB has not provided facts to support its position that the stall door is self-closing. Stating the stall door is equipped with a mechanism to close, without providing the factual basis for this conclusion, is not sufficient. *See Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir.1985) ("[e]xpert opinion is admissible and may defeat summary judgment if it appears the affined is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not"); *see also Walton v. U.S. Marshals Service*, 493 F.3d 998, 1008 (9th
/////

Cir. 2007) (conclusory opinion not admissible). Whether the stall door is actually self-closing is a material fact in dispute. BBB's motion for summary judgment on this issue is DENIED.

      D.  Toilet Tissue Dispenser

Plaintiff argues the toilet tissue dispenser in BBB's restroom does not comply with the 1991 Standards because the second roll of tissue is not located within twelve inches of the front edge of the toilet seat and is not within thirty-six inches of the back wall. Plaintiff does not cite any cases that have recognized the requirements plaintiff says apply. BBB argues that the toilet tissue dispenser is ADA compliant because the first roll of toilet tissue is in an accessible location, and cites cases to support this position. In *Kohler II*, for example, the court found the toilet tissue dispenser was within reach as required by ADAAG § 4.16.6, even though the spare roll of tissue was not within twelve inches of the toilet seat edge; plaintiff had relied on California Building Code Section 1115(b)(9) for his twelve inch requirement, which does not govern ADA claims. *Kohler II*, 2012 WL 3018320, at *6; ECF No. 87-1 at 19; Decl. of Matthew Kenefick, ECF No. 88, Ex. 2. Also in the case of *Strong*, the court granted defendant's motion for summary judgment because one of the two rolls of toilet paper were within reach. *See Strong v. Walgreen Co.*, No. 09cv611 WQH (BLM), 2011 WL 5374125, at *9 (S.D. Cal. Nov. 8, 2011); ECF No. 87-1 at 18.

Section 4.16.6 of the 1991 ADAAG provides that "[t]oilet paper dispensers shall be installed within reach, as shown in Fig. 29(b)." That illustration shows a toilet paper dispenser mounted on a side wall without providing specific measurements from the back wall or from the toilet to the dispenser, though it does show that the dispenser should be mounted nineteen inches above the floor.

Plaintiff argues that the placement of toilet tissue dispensers is prescribed by Figure 30(d) of the 1991 Standards. Section 4.17.1 provides that accessible toilet stalls "shall meet the requirements of 4.17." Section 4.17.3 further specifies that "[t]he size and arrangement of the standard toilet stall shall comply with Fig. 30(a)." That illustration does not show a toilet

13

paper dispenser or otherwise discuss toilet paper dispensers.  Figure 30(d) does show a measurement of 36 inches, which appears to be related to a toilet paper dispenser, but may also relate to the grab bar.  As Section 4.17.6 provides that grab bars must comply with Figures 30(a), (b), (c) and (d), it is not unreasonable to interpret the illustration in 30(d) as applying the 36 inch measurement to the placement of grab bars rather than to toilet paper.  *See generally Strong*, 2011 WL 5374125, at *9 (rejecting the claim that 1991 ADAAG provides measurements for installing toilet paper dispensers).  Regardless, plaintiff's argument that the toilet tissue dispenser was outside the established reach range fails because the twelve inch distance is not an ADA requirement.  Plaintiff's allegation that the toilet tissue dispenser was difficult for him to reach and use, taken as true, also is not sufficient for his ADA claim to survive.  *See Wilson v. Norbeck*, CIV S 04 0690 DFL JFM, 2005 WL 3439714, at *4 (E.D. Cal. 2005) (rejecting similar claims about placement of toilet tissue dispenser and denying plaintiff's motion for summary judgment despite his claim that dispenser was "difficult for him to reach").

The pictures of the toilet tissue dispenser show that at least the first roll of toilet tissue is within reach and plaintiff does not dispute this fact.  ECF No. 91-4, Ex. B, C.  BBB's motion for summary judgment on this claim is GRANTED.

    E.  Undersink Pipes

The parties do not dispute the fact that the pipes under the sink are now fully insulated and wrapped as required by the ADAAG.  ECF No. 87-2 ¶ 16.  Plaintiff no longer seeks injunctive relief with respect to this barrier.  ECF No. 91 at 6.  Because injunctive relief is the only remedy available under Title III of the ADA, an action becomes moot if the facilities are brought into compliance during the course of the litigation.  *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).  Here, there is no dispute that the undersink pipes are now in compliance with the ADAAG.  BBB's motion for summary judgment on this issue is GRANTED.

/////

/////

F. <u>State Law Claims</u>

Defendant BBB did not move for summary judgment on plaintiff's state law claims. Rather, BBB contends the court must dismiss plaintiff's state law claims because this court's exercise of jurisdiction over the state law claims is supplemental only. ECF No. 87-1 at 23; 28 U.S.C.A. § 1367(c)(3). BBB's position does not account for the possibility that the court would not grant summary judgment for BBB on all of plaintiff's federal ADA claims.

Because one of plaintiff's ADA claims has survived summary judgment, the court retains supplemental jurisdiction over plaintiff's state claims.

G. <u>Improper Joinder of BBB as a Defendant</u>

Defendant BBB also contends the court should sever plaintiff's state law claims from his ADA claims against Kohl's because BBB was improperly joined as a defendant. ECF No. 87-1 at 21. To support this contention, BBB cites cases in which defendants were severed for lack of compliance with Rule 20's requirement of "arising out of the same transaction, . . . [or] occurrence." ECF No. 87-1 at 22; FED. R. CIV. P. 20. Whether BBB was improperly joined is not appropriately resolved on a summary judgment motion. Under Rule 21 of the Federal Rules of Civil Procedure, the appropriate remedy is to move the court to either drop the improperly joined party, or to sever the claim by or against that party. FED. R. CIV. P. 21; *see* 7 Wright, Miller, & Kane, *Federal Practice and Procedure*: Civil 3d § 1684 (2001). Moreover, Rule 21 states that "[m]isjoinder of parties is not a ground for dismissing an action." FED. R. CIV. P. 21. Here, even if the court were to consider BBB's claim of improper joinder, the result would be the same. BBB is the only remaining defendant, and this court retains supplemental jurisdiction over plaintiff's state law claims based on its original jurisdiction over plaintiff's ADA claims against BBB, not against Kohl's. Severance of plaintiff's claims against BBB from those made against defendant Kohl's would have no effect on the outcome of BBB's present motion. BBB's claim of improper joinder is misplaced.

/////

IT IS THEREFORE ORDERED that:

1. BBB's motion for summary judgment is GRANTED as to plaintiff's ADA claims regarding strike side clearance, toilet tissue dispenser location, and undersink pipes;

2. BBB's motion for summary judgment is DENIED as to plaintiff's ADA claim regarding the stall door as not self-closing; and

3. The court retains supplemental jurisdiction over plaintiff's state law claims.

DATED: September 28, 2013.

_____
UNITED STATES DISTRICT JUDGE